UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY WILSON,                )<br>                                                     )<br>    Plaintiff,                           )<br>                                                     )<br>    v.                                       )<br>                                                     )<br>CAROLYN W. COLVIN,              )<br>Acting Commissioner of Social Security,  )<br>                                                     )<br>    Defendant.                         )<br>                                                     ) | No. 4:15-CV-858-SPM |

# MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Kimberly Wilson ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I cannot conclude that the decision denying benefits was supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand for further proceedings.

   I.   **PROCEDURAL BACKGROUND**

On March 17, 2011, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since January 1, 2008, due to a learning disability. (Tr. 229-239, 310). The onset date was later amended to October 1, 2012. (Tr. 74). Plaintiff's applications were denied initially, and she

filed a request for a hearing. (Tr. 111-20). Plaintiff participated in a hearing, received an unfavorable decision, and appealed the decision to the Appeals Council, after which the case was remanded back to the ALJ on September 10, 2013. (Tr. 33-51, 91-104 163-68, 105-08). After a second hearing, a second unfavorable decision was issued on December 22, 2014. (Tr. 10-32). Plaintiff filed a request for review of the hearing decision, and on April 1, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

II. **FACTUAL BACKGROUND**

A. **Plaintiff's Statements and Testimony**

In a Function Report completed on March 27, 2011, Plaintiff stated that she has never been able to read or write and cannot count money; that she has a hard time understanding directions; that she is always afraid of looking dumb and being laughed at; and that she has problems with memory, concentration, completing tasks, following directions, and getting along with others. (Tr. 321, 323-25). She also indicated that she has severe mood swings. (Tr. 326).

Plaintiff testified at a hearing before the ALJ on August 25, 2014. She has completed the tenth grade and was in special education classes in school. (Tr. 57). She cannot read well enough to read newspapers or magazines and cannot read or write a grocery list. (Tr. 58). She had to take her driver's test fifteen times before she passed it. (Tr. 68). She suffers from depression and from knee problems. (Tr. 70-71). Plaintiff testified that people at work say she always has an attitude and does not know how to talk to people. (Tr. 66). She has difficulties getting along with co-workers, because they use words she does not understand and they laugh at her. (Tr. 66). Plaintiff's most recent job was working for a parking company; she got fired after a month because she "supposedly

cussed out some customers." (Tr. 65). She has also worked in the past as a part-time cook, as a lab technician (taking care of mice), and as a babysitter. (Tr. 58-59, 64).

### B. Plaintiff's Medical Records

Plaintiff's treatment records during the relevant period show that she has reported depression; wanting to hurt herself; poor appetite; thoughts of suicide; difficulty sleeping; homicidal thoughts; hearing voices, irritability; anger; knee pain; and lower back pain. (Tr. 462, 468, 541, 611, 615, 626, 650, 655). Her diagnoses include bipolar disorder, post-traumatic stress disorder, borderline personality disorder, depression, alcohol-induced mood disorder, cannabis-induced anxiety disorder, and osteoarthritis of the right knee. (Tr. 463-64, 530, 610, 630).

On April 29, 2011, Plaintiff was seen for a psychological evaluation by Michael T. Armour, Ph.D. (Tr. 405-14). She was 41 years old at the time of the examination. (Tr. 405). Dr. Armour noted that Plaintiff reported running away from home for weeks at a time between the ages of nine and twelve; being in fights as a child and using weapons, including knives; stealing money and food; bullying others; and being bullied. (Tr. 406). She reported that she had attended school in the eleventh grade but had not finished that year. (Tr. 406). She indicated that she had been in special education classes beginning in kindergarten because they had told her that she was a troubled kid and was dumb. (Tr. 406). Her mood during the examination varied from euthymic to upset and tearful. (Tr. 409). She reported having an "attitude" and having problems with irritability, sadness, and feeling empty. (Tr. 409). She reported sleep problems, nightmares, intrusive thoughts, and a past suicide attempt. (Tr. 409).

Dr. Armour conducted testing and found Plaintiff to have a Verbal Comprehension Score of 63; a Perceptual Reasoning score of 82; a Working Memory score of 77; a Processing Speed Index score of 74; and a Full Scale IQ score of 70. (Tr. 408). Dr. Armour noted that her Full Scale IQ fell in the low end of the borderline range. (Tr. 408). Dr. Armour's diagnoses included a reading

disability, posttraumatic stress disorder, and borderline intellectual functioning, and he assigned Plaintiff a Global Assessment of Functioning score of 50-55.[1] (Tr. 410-11). He found that Plaintiff had mild to moderate impairment in activities of daily living; mild to moderate impairment in social functioning; mild to occasionally moderate impairment in concentration, persistence, or pace; and no episodes of decompensation. (Tr. 411). He opined that Plaintiff had moderate impairment in the ability to understand and remember instructions; mild to occasionally moderate impairment in the ability to sustain concentration and persistence in tasks; and moderate impairment in the ability to interact socially and adapt to her environment. (Tr. 411-12).

On June 10, 2014, F. Timothy Leonberger, Ph.D., conducted a neuropsychological evaluation of Plaintiff. (Tr. 450-55). He noted that Plaintiff had been in special education classes beginning in kindergarten and had left high school sometime in eleventh grade. (Tr. 451). She was suspended for fighting two or more times. (Tr. 451). After performing testing, Dr. Leonberger found that Plaintiff had Broad Reading, Broad Mathematics, and Broad Written Language scores that were "all in the extremely low range of functioning" and were "significantly lower than would be expected, considering her Full Scale IQ score." (Tr. 453). He diagnosed alcohol abuse, cannabis abuse, nicotine dependence, reading disorder, disorder of written expression, and borderline intellectual functioning, and he assigned a GAF score of 50. (Tr. 454). He found that Plaintiff had

---

[1] The Global Assessment of Functioning ("GAF") scale is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

no impairment to mild impairment in activities of daily living; moderate to marked impairment in social functioning; moderate to marked impairment in concentration, persistence, and pace; and moderate impairment in deterioration or decompensation in work or work-like settings. (Tr. 454).

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is

not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since October 1, 2012, her amended alleged onset date, and that Plaintiff had the severe impairments of osteoarthritis of the right knee, degenerative disc disease of the lumbosacral spine, obesity, post-traumatic stress disorder, alcohol dependence with alcohol-induced mood disorder, cannabis dependence with cannabis-induced anxiety disorder, borderline antisocial personality disorder, borderline intellectual functioning, and learning disorder for reading and written expression. (Tr. 16). The ALJ then found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"). (Tr. 16). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 §§ CFR 404.1567(b) and 416.967(b), except that Plaintiff can only occasionally climb stairs and ramps but never climb ladders, ropes, or scaffolding; can only occasionally crouch, kneel, and crawl; can only perform unskilled work with simple routine tasks primarily dealing with things rather than people; can occasionally relate with coworkers, supervisors, and the general public at work; and is limited to work with goals, not strict fast-paced production quotas. (Tr. 18-19).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ erred by failing to consider whether Plaintiff met or equaled Listing 12.05C; and (2) the ALJ erred by failing to weigh the opinion of the consultative examiner, Dr. Leonberger.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275

F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Remand Is Required for the ALJ to Consider Whether Plaintiff Meets or Equals Listing 12.05C

Plaintiff's first argument is that the ALJ erred by failing to consider whether Plaintiff met or equaled Listing 12.05C, one of the listings covering intellectual disabilities. The Court agrees.

To meet Listing 12.05C, a claimant must show "(1) a valid verbal, performance, or full scale IQ of 60[-]70; (2) an additional 'severe' impairment [a physical or other mental impairment imposing an additional and significant work-related limitation of function]; and (3) evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two." *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014) (citing *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006)); *see also* 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.05. The burden is on Plaintiff to demonstrate that her impairment matches all the specified criteria of a listing. *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013).

The ALJ here considered whether Plaintiff met two other listed impairments, but he did not consider whether Plaintiff met Listing 12.05C. The ALJ's failure to discuss a specific listing is not reversible error if the record supports the overall conclusion that Plaintiff does not meet the Listing. However, remand is required where the ALJ's findings, considered in light of the record as a whole, are insufficient to permit a finding by the court that substantial evidence supports the Commissioner's decision. *See Chunn v. Barnhart,* 397 F.3d 667, 672 (8th Cir. 2005) (remanding for further consideration and findings with regard to Listing 12.05C where the ALJ did not address Listing 12.05C and where, after review of the record, the court could not conclude that the ALJ's decision was supported by substantial evidence on the record as a whole); *see also Pannell v. Colvin*, No. 1:14 CV 151 DDN, 2015 WL 4887668, at *8 (E.D. Mo. Aug. 17, 2015) ("[T]he Eighth Circuit has also held that a remand is required where the ALJ's conclusions, considered in light of the record as a whole, are insufficient to permit a finding by the court that substantial evidence supports the Commissioner's decision.") (citing *Pettit v. Apfel*, 218 F.3d 901, 903-04 (8th Cir. 2000) and *Chunn*, 397 F.3d at 672 (8th Cir. 2005)).

Here, the ALJ's findings and the record as a whole are insufficient to permit this Court to find that substantial evidence supports the Commissioner's decision that Plaintiff does not meet or equal Listing 12.05(C). It appears from the record that each element of Listing 12.05C is, or at least may be, satisfied here. The first element appears to be met, because Plaintiff's IQ test showed that Plaintiff has a verbal comprehension score of 63 and a full scale IQ score of 70—both scores within the range described in Listing 12.05C. (Tr. 408). The consultative examiner who conducted Plaintiff's IQ testing noted that "the current evaluation appears to be a valid sample of her current level of functioning." (Tr. 408). The second element of Listing 12.05C is met, because the ALJ found that Plaintiff had several severe impairments in addition to her intellectual impairments—including osteoarthritis of the right knee, degenerative disc disease of the lumbosacral spine, post-

traumatic stress disorder, and borderline antisocial personality disorder—and he imposed limitations reflecting those impairments. (Tr. 16, 18-19). It appears that the third element may also be met, because the record contains evidence that Plaintiff had significant deficits in IQ and adaptive functioning prior to the age of twenty-two. Although Plaintiff's IQ scores were obtained when she was well over the age of twenty-two, the Eighth Circuit has repeatedly held that "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Maresh*, 438 F.3d at 900 (quoting *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001)). Additionally, the record shows that Plaintiff was in special education classes starting in kindergarten; that she dropped out of school during the eleventh grade; that she has always had very little ability to read or write; and that she had difficulties with bullying, stealing, and fighting as a child. (Tr. 321, 406, 451, 615). Together, this evidence suggests that Plaintiff had intellectual and adaptive functioning deficits that manifested themselves before the age of 22. *See Reed v. Colvin*, 779 F.3d 725, 727 (8th Cir. 2015) (finding that evidence of attending special education classes, repeating several grades, and having problems with math and learning to read constituted evidence that mental retardation manifested itself before age 22); *Maresh*, 438 F.3d at 900 (finding that evidence of taking special education classes, dropping out of school, having trouble with reading, writing, and math, and having frequent fights with other children constituted evidence of mental retardation with deficits in adaptive functioning prior to age 22).

The Commissioner emphasizes that the ALJ need not rely exclusively on IQ scores to assess whether a clamant meets a listing, and she argues that the ALJ did not find that Plaintiff's verbal comprehension score of 63 and full scale IQ of 70 were a valid reflection of Plaintiff's functioning. However, it is not at all clear that the ALJ so found. The ALJ mentioned Plaintiff's IQ scores, but he did not discuss whether or not he found them valid or reflective of Plaintiff's functioning, nor did he expressly assess them with respect to Listing 12.05C. That distinguishes the instant case

from the cases relied on by the Commissioner, in which the ALJ expressly considered Listing 12.05C and addressed the reliability of the IQ scores in the record. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 537 (6th Cir. 2014) (affirming the decision of the Commissioner where, in finding that Plaintiff did not meet Listing 12.05C, the ALJ specifically discussed Plaintiff's IQ test, "emphasizing the questionable reliability of its results because of Peterson's variable effort, and further noted that the record failed to demonstrate that Peterson's IQ was in the range of 60 to 70 before age twenty-two" ); *Miles v. Barnhart*, 374 F.3d 694, 698-99 (8th Cir. 2004) (affirming where "the ALJ found that [the plaintiff] had not met § 12.05 of the Listing of Impairments" and in doing so "discounted the IQ score of 59" for several reasons stated in the ALJ's decision).; *Clark v. Apfel,* 141 F.3d 1253, 1255-56 (8th Cir. 1998) (affirming the ALJ's decision to reject IQ scores of 66 and 67 where the ALJ expressly found the IQ score not credible in light of several factors and that finding was supported by the record.).

Here, despite the presence of IQ scores in the relevant range, the ALJ did not provide any reason for discounting Plaintiff's IQ scores and did not specifically address Listing 12.05C. Such circumstances often warrant remand. *See Chunn*, 397 F.3d at 672 (noting conflicting evidence in the record and finding that the court "cannot conclude that the decision is supported by substantial evidence on the record as a whole" because "the ALJ failed to support his finding on step three that [the plaintiff's] impairments did not equal a listed impairment, and it is not clear from his decision that he even considered whether [the plaintiff] met the requirements for listing 12.05C"); *Muncy v. Apfel*, 247 F.3d 728, 733-35 (8th Cir. 2001) (noting that "[a]n ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior," but remanding because the ALJ "neither addressed the discrepancy between [the plaintiff's] two IQ scores nor discussed what factors called into question the first score's validity"); *Murphy v. Colvin*, No. 1:12-CV-01099,

2013 WL 4198345, at *4 (W.D. Ark. Aug. 15, 2013) (remanding where the ALJ failed to explain why he did not credit IQ scores of 67 through 70 in evaluating whether Plaintiff met Listing 12.05C; stating, "an ALJ may reject IQ scores that are inconsistent with the record but he must provide a legitimate basis for his decision").

The Commissioner also emphasizes that Plaintiff was diagnosed with borderline functioning and not with mental retardation. The Commissioner argues that a finding of borderline intellectual functioning is inconsistent with a finding of mental retardation, because according to the *DSM-IV*, those two diagnoses describe different degrees of severity of the same general medical condition. However, the Commissioner's reliance on the *DSM-IV* and on Plaintiff's formal diagnoses is misplaced. In *Maresh*, the Eighth Circuit rejected the Commissioner's argument that the plaintiff did not meet Listing 12.05 because he did not meet the *DSM-IV* definition of mental retardation, noting that in revising the Listings in 2002, "the Commissioner rejected a proposal that the *DSM*'s definition be used for Listing 12.05." 438 F.3d at 899. The Eighth Circuit also expressly rejected the Commissioner's argument that Listing 12.05 requires a formal diagnosis of mental retardation. *Id.* The Court acknowledges that on remand, the ALJ may find that Plaintiff's borderline intellectual functioning diagnosis, and the absence of a mental retardation diagnosis, has some probative value with regard to Plaintiff's level of functioning. *See, e.g.*, *Peterson*, 552 F. App'x at 539 ("Although [a mild mental retardation] diagnosis is not a necessary prerequisite to satisfy Listing 12.05, its absence is probative for a 12.05C determination."). However, on the current record, which involves IQ scores within the range described in Listing 12.05C and no express discussion of this issue by the ALJ, the Court cannot find that the diagnosis of borderline intellectual functioning constitutes substantial evidence to support the ALJ's decision.

For all of the above reasons, the ALJ's findings and the record as a whole are insufficient to permit this Court to find that substantial evidence supports the Commissioner's decision that

Plaintiff does not meet or equal Listing 12.05C. Thus, the Court finds that remand is necessary for the ALJ to consider whether Plaintiff meets or equals Listing 12.05C.

### C. The Opinion of Dr. Leonberger

Plaintiff's second argument is that the ALJ erred by failing to weigh the opinion of the consultative examiner, Dr. Leonberger. In light of the need for remand at Step Three, the Court need not decide whether this issue requires remand. On remand, the ALJ should ensure that he evaluates Dr. Leonberger's opinion in a manner consistent with 20 C.F.R. §§ 404.1527(c) and 416.927(c), as well as Social Security Ruling 96-8p, 1996 WL 374184, at *7 (1996).

### VI. CONCLUSION

For the reasons set forth above, the Court cannot find that the decision of the Commissioner is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2016.